THE SEASIDE REALTY AND IMPROVEMENT COMPANY, PROSECUTOR. v. ATLANTIC CITY, RESPONDENT.

Argued June 6, 1906—Decided November 12, 1906.

1. The act (*Pamph. L.* 1894, *p.* 146) conferring powers upon cities located on or near the ocean to lay out parks is constitutional.

2. The act (*Pamph. L.* 1903, *p.* 387) providing that the state's land, within the limits of a park laid out by any city under the provisions of the act of 1894 (*Pamph. L., p.* 146), may be granted by the riparian commissioners to such city is constitutional. Its subject is expressed in its title. It is not special legislation regulating the internal affairs of cities. It does not deprive the free schools of the state of the income appropriated to their support.

3. The order of a justice of the Supreme Court, who had allowed a writ of *certiorari*, striking out one of the reasons filed—such reason attacking an ordinance which had been in existence over six years without being questioned—is approved.

On *certiorari*.

This writ brings up an ordinance of Atlantic City, approved April 13th, 1899, and a resolution of common council passed January 8th, 1906. The ordinance was passed to carry out a scheme provided for in the statute passed in 1894. *Pamph. L., p.* 146. The first section of the act of 1894 provided that "it shall be lawful for the common council or other governing body of any city in this state, located on or near the ocean and embracing within its limits or jurisdiction

any beach or ocean front, to open and lay out on or along such beach or ocean front a public park or place of public resort or recreation." The second section provides that "whenever the common council or other governing body shall determine to open or lay out such a park or place for public resort or recreation, it shall first cause the interior or inland line of same to be established and suitably marked upon the ground, and cause a description of same to be filed at the office of the city clerk of said city, there to remain of record; and such interior or inland line shall not be established further inland than ordinary high-water mark along such beach or ocean front, and may extend along the same within the limits of such city or along any part thereof." Section 3 provides that when such interior line has been established it may.be lawful for the common council to purchase or condemn all the land, real estate, property and rights of persons and cor- porations, situated, lying and being within and between the lines so established and the exterior line now or hereafter established by the state riparian commissioners along and in front of property, over and across which such interior line has been established, and to devote the same exclusively to public use as a public park or place of public resort and recre- ation, and keep the same forever open and unobstructed for such public use.

By the ordinance, the city council determined to open and· lay out a park or place of public resort and recreation, and determined, fixed and established the interior or inland line for same, as required by the preceding statute, specifically stating the boundaries of said park. It empowered the city solicitor to cause the land within the limits of said park to be condemned, and directed the issue of bonds to raise money to pay for same.

The resolution brought up rests upon the act of 1903. *Pamph. L., p.* 387. This act provides that whenever any public park has been or shall hereafter be laid out or pro- vided for by ordinance under the authority of any act of the legislature, along or fronting upon any of the tidewaters of this state, such municipality may apply to the riparian com-

missioners for a grant or conveyance to such city or municipality of lands under water within the limits of said park. The second section provides that "the commissioners may, upon the payment therefor of a consideration, the amount of which shall be fixed in the manner now provided by law for the fixing of the amount of consideration to be paid for the grant of riparian land by said commissioners, make all such grants or conveyances applied for as aforesaid of the land under water owned by the state extending from the inland limits of such park to the exterior line established, or to be hereafter established by the said commissioners."

The resolution of January 8th, 1906, authorized the finance committee to purchase from the state board of riparian commissioners all riparian lands not before purchased by individuals on the ocean front, paying therefor the fee fixed by the commissioners.

Before Justices FORT, GARRETSON and REED.

For the prosecutor, *Thompson & Cole.*

For Atlantic City, *Godfrey & Godfrey.*

The opinion of the court was delivered by

REED, J. Taking up the attacks leveled against the proceedings brought up in an orderly manner, I will first speak of the alleged unconstitutionality of the act of 1894, upon which act the validity of the ordinance and the resolution rests. It is asserted that the statute is special, because it does not include in the scope of its operation other cities not located near or on the ocean, but which may have a beach front.

It seems useless to say more than was said in the opinion in the case of *Bowker* v. *Wright*, 25 *Vroom* 130, and in Johnson v. Ocean City, decided at the present term, involving a statute similar, in substance, to the act of 1894.

It is next said that the act of 1903 is unconstitutional, for

several reasons—*first,* because its object is not expressed in its title; *second,* because it is special and regulates the internal affairs of cities; and *third,* because it strips the owner of the *ripa* of equal protection of the law, and of his property without compensation.

The act is entitled "A further supplement to an act entitled 'An act to ascertain the rights of the state and of riparian owners in lands lying under the waters of the bay of New York and elsewhere in the state.'" The original act dealt with the methods by which the owner of the *ripa* could acquire title, and when title should be granted to persons other than the owner of the *ripa.* This supplement only modifies the pre-existing law in respect of the rights of such owners by providing that no right shall exist in the owner where the land is specially located. This legislation seems to be fairly within the purview of the title of the act. Nor, secondly, does it seem to be special regulation of the internal affairs of cities, for, as already remarked, the park scheme itself is general, and not special legislation. Nor, thirdly, does it strip the riparian owner of his property without compensation, for he has no property in lands below high-water mark, save such as he derives from the statute, and the state can lease or sell, or refuse to lease or sell, to any person it chooses to select.

It is, again, objected that the act of 1903 runs counter to the rule in *Henderson* v. *Atlantic City,* 19 *Dick. Ch. Rep.* 583, in which case it was declared that the statute which gave away riparian lands infringed the constitutional provision which devotes the income from such lands to the support of free schools. The present statute provides that the land shall be sold upon payment of the amount fixed in the manner now provided by law for the fixing of the amount of consideration to be paid for the grant of riparian lands by the riparian commissioners. Thus the city is to pay according to the schedule of rates fixed for all purchasers. This schedule is presumed to be made in pursuance of the exercise of a reasonable discretion lodged in the commissioners. The insistence of the prosecutor, if conceded, would lead to the necessity of

putting every sale or lease up to public auction, so that the school fund may receive the greatest possible advantage.

But this insistence cannot be allowed, for such was not the legislative intention. The schools became entitled to the moneys received from the sale and rentals of land under water by the act of 1894. *Pamph. L., p.* 123. For twenty-five years previously a system of renting and selling these lands at prices fixed by commissioners and other state officials had prevailed. It cannot be supposed that the legislature, in 1894, intended to change the system by which these lands had been disposed of by the state. So, we think, there is no substance in this point.

Again, the resolution of January 8th, 1906, authorizing the purchase from the riparian commissioners of the state lands within the limits of the park is attacked, because no power to purchase from the state is granted by the act of 1894. The insistence is that the power granted in that act is only to purchase or condemn all the lands, real estate, property and rights of persons and corporations between the interior line established by the ordinance and the exterior line established by the riparian commissioners, and that the state is neither a person nor a corporation within the meaning of the statute. At this stage of the discussion, however, I think it useless to discuss this question of statutory construction, because we have concluded that the act of 1903 is a constitutional act, and if this act is valid it contains a plenary grant of power to the state, through its commissioners, to sell, and to Atlantic City, through its common council, to purchase these lands.

It is, again, objected that there is no provision for paying for the lands which the resolution directs the finance committee to purchase. Where power is given to a municipality to incur an indebtedness, the power exists, certainly, until it appears that there is some statutory limitation to the expenditure of money which will suspend the power, or there is some prescribed method for payment which has become impossible. Nothing of the kind appears in the case. The act

of 1895 (*Pamph. L., p.* 464) confers power upon cities to issue bonds to raise money to pay for lands purchased for public purposes within the limits of the said city. It is true the counsel for the prosecutor contends that by the terms of this statute this action can be taken only when no adequate provision is made or authority given to provide for the payment of lands purchased for public purposes, and insists that there is nothing to show that Atlantic City was without adequate provisions to raise the money in this instance.

It is at once perceived that the argument is self-destructive, for if the city had adequate provision the reason urged against the resolution falls to the ground, and if they had not they could issue bonds.

There is another reason appearing upon the record, which challenges the validity of the ordinance of 1889, because, as is alleged, it was passed without notice to the property owners liable to be assessed.

This reason, the justice who allowed the writ, after its allowance and upon the hearing of the parties, directed to be struck out. The power of the justice to take this course is challenged by the counsel for the prosecutor. It is entirely settled that a writ of *certiorari* is an extraordinary writ. The allowance of it is not a matter of strict right, but rests largely in the discretion of the court or justice. The instances in which a writ has been refused on the ground of laches of the prosecutor or because its allowance would result in an injury to public interests are numerous.

The power to dismiss a writ, after allowance, for the same reasons, is recognized in numerous cases. If the allowance can be refused or the writ dismissed upon these grounds, there is no perceivable reason why the matters to be reviewed by the writ may not be circumscribed by the court. The proceedings brought up very often consist of consecutive municipal acts, some of them occurring years before, and others quite recently. The more recent ones may depend for their validity and construction upon the anterior proceedings, and so all are essential to determine the validity of the former.

All are therefore properly included in the return to a writ.

But this furnishes no reason why the latter proceedings should necessarily be subjected to an independent attack. They may have existed so long unchallenged, and their disturbance would so injuriously affect public interests, that a writ directed to them alone would either not be allowed, or, if allowed, dismissed.

This seems to be the posture in the present case. The ordinance attacked was passed in April, 1899. The scheme it was intended to carry into effect was one of great interest to the citizens of Atlantic City and to the visitors thereto. Until the issuing of this writ it had stood unchallenged. In the meantime evidence may have been lost and property rights by virtue of it acquired by the city. During all this time statutes have been passed to effectuate the scheme, and important litigation concerning it has occupied the attention of the courts. All this must have been known to every person interested. It is true that the present prosecutor, so far as appears, was not the owner of property liable to be affected by it at the time of the passage of the ordinance, for his interests seem to have been acquired by quite recent purchases of lands adjoining the proposed park. But, conceding that he acquired a footing by his purchase to sue out this writ, he took that interest as it existed in his vendors, and their delay in questioning the validity of the ordinance from April, 1899, up to the time of the allowance of this writ, is imputable to him.

If the action of the justice in striking the reason from the record is reviewable, which is not decided, we are of the opinion that this action was entirely justifiable; and if the reason had been permitted to stand, yet in the exercise of the discretion lodged in this court the writ, so far as it challenges the ordinance, would be dismissed.

For the reasons stated, we think the writ should be dismissed.