ISABELLA S. FISHBLATT, PROSECUTRIX, v. ATLANTIC CITY, RESPONDENT.

Argued May 17, 1909—Decided June 7, 1909.

1. Under section 5 of the *Certiorari* act (*Pamph. L.* 1903, *p.* 344), after the plaintiff's reasons for reversal are filed, either party may bring the action on for argument before any justice of the Supreme Court at chambers, by giving five days' notice within fifteen days after the reasons are filed.

2. The act approved April 26th, 1894 (*Pamph. L.*, *p.* 146), conferring powers upon cities located on or near the ocean to lay out public parks is constitutional.

3. Under the act approved April 3d, 1902 (*Pamph. L.*, *p.* 284), which was adopted by Atlantic City as its charter, that city has power by ordinance to issue its corporate bonds in amounts not exceeding the limit prescribed in the act, for the purpose of providing moneys with which to lay out and open, and to purchase and condemn land for and within the limits of, a public park along the ocean front, established by ordinance pursuant to the authority conferred by the act approved April 26th, 1894. *Pamph. L., p.* 146.

4. In an ordinance the authorization of bonds not to exceed a certain amount is equivalent, in legal effect, to fixing the amount of such bonds at such sum.

On *certiorari.*

Before Justice TRENCHARD.

For the prosecutrix, *Thompson & Cole.*

For the respondent, *Harry Wootton, Godfrey & Godfrey* and *Gilbert Collins.*

The opinion of the court was delivered by

TRENCHARD, J. This writ of *certiorari* brings up for review an ordinance of Atlantic City.

The argument thereof is brought on by the respondent before me at chambers. The prosecutrix objects that the statutory conditions to an argument at chambers before a single justice of the Supreme Court have not been complied with. I think they have. Five days' notice was given within fifteen days after reasons were filed. By section 5 of the *Certiorari* act (*Pamph. L.* 1903, *p.* 344) such notice is sufficient. It is not necessary, as contended by the prosecutrix, that it be noticed for a day not later than fifteen days from the day reasons were filed.

The ordinance under review is for a bond issue of $500,000 for public park purposes.

Atlantic City was originally incorporated in 1854. *Pamph. L., p.* 278. Inspection of its charter shows that the city

fronts upon the Atlantic ocean, and indeed the court will take judicial notice of that fact. Nothing in that charter or any supplement thereto authorizes public parks. By an act approved April 26th, 1894 (*Pamph L., p.* 146), any city in this state, located on or near the ocean, and embracing within its limits or jurisdiction any beach or ocean front, may open and lay out on and along such beach or ocean front a public park or place for public resort and recreation, and may acquire lands for such purpose by purchase and condemnation. No provision for payment for the lands was made, and therefore each city would have to resort to its charter powers.

*First.* It is contended by the prosecutrix that the act of 1894 is unconstitutional. The grounds given for its invalidity are that it is a special law regulating the internal affairs of cities, contains more than one object, does not display its object in its title, deprives landowners of their property without due process of law, and denies them the equal protection of the laws. The act has been held constitutional by the Court of Errors and Appeals. *Seaside Realty Co.* v. *Atlantic City,* 45 *Vroom* 178; affirmed on the opinion below, 47 *Id.* 819. True, the only point urged against the act in that case was its alleged obnoxiousness to the constitutional prohibition against special legislation. There is nothing, however, in the other points now made against the act. Its title clearly expresses its object, and that object is single. In giving effect to section 7, article 4 of the constitution, the courts give paramount consideration to the general object of the act —the general purpose of the legislative scheme. The general object of the act being ascertained, the legislature may include in it provisions of a multiform character, designed to carry into execution the legislative purpose, which are not inconsistent with or foreign to the general object of the act. *Easton and Amboy Railroad Co.* v. *Central Railroad Co.,* 23 *Id.* 267.

What counsel means by the suggestion that the act deprives landowners of their property without due process of law, or denies them equal protection of the laws, is difficult to surmise. Their property cannot be taken without compensation,

and all property within the limits of the authorized park is put on an equal footing. Similar objections to the act of 1903 (*Pamph. L., p.* 387), which affected the act of 1894 by permitting the city to acquire the state's land under water, against any pre-emption of a riparian owner, were held untenable in *Seaside Realty Co.* v. *Atlantic City,* 45 *Vroom* 178, 181.

*Secondly.* It is urged that there is no power in the city council of Atlantic City to enact the ordinance in question.

If the original charter of Atlantic City were the only legislation to which resort could be had, this point would be well taken, and the general act of 1895, hereinafter mentioned, would be unavailable because of its limitation as to the amount of bonds authorized. The authority for the ordinance in question will be found in "An act relating to, regulating and providing for the government of cities," approved April 3d, 1902 (*Pamph. L., p.* 284), which has been adopted by Atlantic City as its charter.

Section 66 of that act provides that it shall be lawful for the city council, whenever in their opinion the public good requires it, by ordinance:

"1. To lay out and open any * * * public park * * * within such city, * * * and to purchase or condemn for any such purpose, when necessary, any lands and real estate upon making compensation to the owner or owners thereof as is hereinafter mentioned and provided, and such power shall belong exclusively to the city council." * * * By section 105 it is provided as follows:

"It shall be lawful for the city council, in the name of the city, under authority of this act, to issue its corporate bonds for any sum not exceeding fifteen per centum of the taxable value of the property rated for assessment, and such obligations shall be issued in the name of the city and under its corporate seal and shall be signed by the mayor and attested by the city clerk and countersigned by the city treasurer; they shall be of such denominations and bear interest at such rate, not exceeding five per centum per annum, and be payable at such times and places not exceeding thirty-five years

from the date of issue as the city council may determine; they shall be disposed of at not less than their par value; the proceeds of such securities may be used for the purpose of making any of the improvements authorized by this act and for other lawful purposes; *provided,* that in every instance the issue of bonds shall be authorized by ordinance and the purpose for which the bonds are to be used shall be expressed therein, and the proceeds thereof shall be used for no other purpose." *   *   *

The ordinance under review ordains, in section 1, "that in pursuance of the power and authority conferred upon the city council of Atlantic City by an act of the legislature of this state, entitled 'An act relating to, regulating and providing for the government of cities,' approved April 3d, 1902, and duly adopted by said city at an election held for that purpose on May 6th, 1902, and under and pursuant to other statutes of said state in such cases made and provided, and for the purpose of providing moneys with which to lay out and open the public park mentioned in the ordinance referred to in the title of this ordinance, and to purchase and condemn lands and real estate for such purpose within the limits of the public park or place for public resort or recreation along the beach or ocean front of Atlantic City, established pursuant to the ordinances referred to in the title of this ordinance, there be issued bonds to an amount not to exceed five hundred thousand dollars ($500,000) of this city." *   *   * The other provisions of the ordinance bring it fully within section 105, above cited, of the act of 1902. The previous ordinances referred to are, one approved October 13th, 1899, establishing a public park upon the ocean front, and upon its face based upon the act of 1894 above mentioned, and an amendment to said ordinance, approved April 10th, 1907, which amends the location of the park as originally established. It may well be that this later ordinance would suffice to bring the public park established within section 66 of the act of 1902, and, if necessary, resort might possibly be had to that section as its authority, but this is not necessary. The act of 1894, the ordinance of 1899 passed thereunder, with its amendment of 1907,

are amply sufficient to invoke the power conferred by section 105 of the act of 1902, for the issue of bonds for the purpose declared in the ordinance under review.

By stipulation it appears that the entire bond issue of Atlantic City is well within the limit of fifteen per centum of the taxable value of the property in said city rated for assessment, and therefore the discretion of the city council to issue bonds is limited only by the restriction that the proceeds thereof are to be used for the purpose of making any improvement authorized by the act of 1902, or *"for other lawful purposes."* No other force can be given the language of the act of 1902 than that whenever a city is authorized by *any law* to expend money it may issue bonds wherewith to raise the money.

But the prosecutrix points to the subsequent language of the proviso which is "whenever bonds are issued to provide the funds *for any of the purposes authorized by this act,"* &c., and says that in view thereof *"other lawful purposes"* means only charter purposes. I think there is no merit in the contention. The pertinent language of the section is this: "The proceeds of such securities may be used for the purpose of making any of the improvements authorized by this act, *and for other lawful purposes;* * * * whenever bonds are issued to provide funds for any of the purposes authorized by this act, any part of the costs and expenses of which is authorized to be assessed upon the property benefited, the assessments for benefits in every such case shall be exclusively appropriated for the redemption of the bonds so issued, and shall be kept separate from the other funds of such city, and devoted exclusively to this use." So far from this language being a limitation of the bond issue to charter purposes, it seems to me that it has directly an opposite effect if the words *"purposes authorized by this act"* are to be construed as referring to only charter purposes, for the condition as to assessments for benefits is imposed only on bonds issued for such purposes, and the plain inference is that bonds may be issued for other lawful purposes, and on those no condition is imposed. In my judgment, however, the construction contended

for is not correct.  I think the words *"purposes authorized by this act"* refer back to the words "purpose of making any of the improvements authorized by this act, and for *other lawful purposes."*  Whenever bonds are issued for *any* lawful purpose in which an assessment for benefits is involved, then the condition of applying the assessment to the redemption of the bonds comes into effect.

I think, notwithstanding the suggestion of the prosecutrix to the contrary, that the establishment of a public park under the act of 1894 is a lawful purpose, and the authority to issue bonds therefor is complete.  As above stated; in the absence of some enabling legislation, Atlantic City would have been compelled to pay for a park established under the act of 1894, by taxation, subject to the right (under section 8 of the act of 1894) to recoup special benefits by an assessment therefor. That right of recoupment, of course, still remains, but the cost in the first instance may be met by a bond issue.  Before the adoption by Atlantic City of the act of 1902 there would have had to be resort to enabling legislation such as "An act to authorize cities in this state to issue bonds in certain cases," approved March 27th, 1895 (*Pamph. L., p.* 464), which authorizes a bond issue not exceeding $100,000, in all cases where any city is or may be authorized to purchase or condemn lands for public purposes, and no adequate provision is made or authority given to provide for the payment therefor. The act of 1895 is not a supplement to the act of 1894, although it is very likely that the later act was prompted by the incompleteness of the former one.  If it were in fact a supplement,.or if the act of 1894 itself limited the bond issue, there would be no restraint upon subsequent legislatures increasing the amount of the lawful bond issue of any city availing itself of the act of 1894, there being no limit fixed on the cost of the park.  It is further urged that no authority to issue bonds for the acquisition of a park under the act of 1894 can be conferred, unless extended to all cities that may have availed themselves or may avail themselves of that statute.  This contention is untenable.  The act of 1894 does not attempt to deal with collateral powers of the various cities

affected by it. Every city circumstanced within the purview of the statute may establish a park. All details, except as to the authorized assessment of special benefits, are left to the machinery of the particular city. Action in some cities may be by resolution; in others must be by ordinance. In some cities a majority vote of the council may suffice for corporate action; in others a larger vote may be requisite. In some cities the mayor may have a veto power; in others not, and so on indefinitely. Similarly in some cities there may be power to issue bonds for public purchases; in others not. So as to the *enlargement* of powers of cities. If such enlargement be by general law, it will operate as to the parks established under the act of 1894, as well as on any other subject within its range. The act of 1902 is general in that any city may adopt its provisions. It is no more reasonable to assail the power for a bond issue for purchases lawful to the city that adopts the act, than to assail any of the manifold powers therein that are not given to cities at large.

Again, it is argued that, in order to support the ordinance under review, the one hundred and fifth section of the act of 1902 must be given a retroactive effect, which is not permissible. I think not. The city urges only a prospective application of the section. There might be some force in the argument if the bond issue ordained was to be in payment of lands purchased or condemned for the park before 1902, but none whatever where the bond issue is ordained "for the purpose of providing moneys with which *to* lay out and open the public park, and *to* purchase and condemn lands for such purpose within the limits of" the park established, pursuant to the ordinances referred to. It cannot be successfully argued that the machinery and powers of government of Atlantic City under the act of 1902 cannot be applied to an antecedent situation in that city. If the city having established a park under the act of 1894 shall now proceed to acquire and pay for it, it must do so under the act of 1902. The bond issue now ordained is in aid of such purpose and acquisition, and is undoubtedly a lawful purpose within the prospective purview of the act of 1902.

Having found power to enact the ordinance in question in the Atlantic City charter, it has been unnecessary to consider whether like power is conferred by the act of 1904 (*Pamph. L., p.* 86), to which reference has been made by counsel.

Lastly, it is argued that the ordinance in question is void because it is said to be indefinite as to the amount of bonds to be issued. It provides for the issuing of bonds "in an amount not exceeding $500,000." But I think that in an ordinance the authorization of bonds not to exceed a certain amount is equivalent, in legal effect, to fixing the amount of such bonds at such sum. *Knight* v. *West Union,* 45 *W. Va.* 194.

The ordinance under review is affirmed, with costs.