JAMES T. BEW ET AL., PROSECUTORS, v. VENTNOR CITY ET AL., DEFENDANTS.

Submitted March 23, 1911—Decided June 6, 1911.

1. Chapter 13 of the laws of 1909 (*Pamph. L., p.* 27) is constitutional.
2. A city having a qualified fee in lands is an owner within the meaning of chapter 13 of the act of 1909 (*Pamph. L., p.* 27).
3. A tract of land wholly surrounded by the waters of the ocean may properly be said to be contiguous to the beach or ocean front as those terms are defined in *Fishblatt* v. *Atlantic City*, 51 *Vroom* 269.
4. The procedure for issue of bonds prescribed by the act of 1909 (*Pamph. L., p.* 27) governs in cases that come within that act, notwithstanding the provisions in the act of 1897 for the government of cities.
5. A resolution for the issue of bonds which sets forth all the purposes for which bonds may be issued under the act of 1909 (*Pamph. L., p.* 27) is not void for uncertainty. The orderly procedure is first to provide for the money needed and then determine on the particular improvement to be made.
6. Where a resolution for issue of bonds specified that they were to be issued for the improvement of the public park, and the land specifically described as the land to be improved is outside the park, the prosecutors are not injured when the depositions show

that the bonds were to be issued to pay for the building of a pier on the specific tract mentioned.

7. Where a public improvement is authorized to be paid for from the proceeds of bonds and there is no other source from which funds can be had, no contracts for the improvement can be legally made until the bonds have been negotiated and the amount available has been ascertained.

On *certiorari*.

Before Justices SWAYZE, BERGEN and MINTURN.

For the prosecutors, *Theodore W. Schimpf.*

For the defendants, *Gilbert Collins, John S. Westcott* and *H. Starr Giddings.*

The opinion of the court was delivered by

SWAYZE, J.   The question involved is the validity of resolutions for the issue of bonds under chapter 13, the acts of 1909 (*Pamph. L., p. 27*), and of contracts for the erection of a pier.  The first objection relates to the constitutionality of the statute.  In view of the decisions with reference to a similar statute, this question is now hardly debatable. *Seaside Realty Co. v. Atlantic City, 45 Vroom 178; affirmed, 47 Id. 819; Fishblatt v. Atlantic City, 51 Id. 269; Crossan v. Ventnor City, Id. 511.*  The prosecutor finds two difficulties in the way of construing the act so as to apply to the present case—*first,* that the city does not own the land proposed to be improved; *second,* that it is only authorized to improve lands owned by it contiguous to the beach or ocean front, and the beach or ocean front contiguous thereto.  The first difficulty is supposed to arise from the fact that although the city has at present a title to the land under a deed with apt words to convey a fee-simple, that title is liable to be diverted hereafter in case the boardwalk along the ocean is moved further oceanward as the land may extend by accretion. This contingency does not prevent the city from owning the fee; it is what is called a qualified fee; but the proprietor of a

qualified fee has the same rights and privileges over the estate till the qualification upon which it is limited is at an end, as if he were a tenant in fee-simple. *Pipe Line Co.* v. *Delaware, Lackawanna and Western Railroad Co.*, 33 *Vroom* 254, 268. The second objection to the applicability of the act rests on the fact that all of the property on which it is proposed to erect this pier lies below the low-water mark. The argument is that a tract wholly surrounded with water cannot properly be said to be contiguous to the beach or ocean front. The answer to this argument is to be found in the opinions of the Court of Errors and Appeals in Fishblatt *v.* Atlantic City and Crossan *v.* Ventnor City, already cited. The boundaries of Ventnor (*Pamph. L.* 1903, *p.* 75), like the boundaries of Atlantic City, extend as far as the jurisdiction of the state, and the reasoning of those cases is therefore applicable to this.

If, however, the act of 1909 is constitutional and applicable, to the situation, the prosecutors insist that the proceedings for the issue of bonds are defective—*first,* because the procedure under the act of 1897, under which Ventnor is governed, was not followed; *second,* because the resolution of November 2d, 1910, is indefinite and uncertain, in that it fails to specify the improvement intended to be made; *third,* because the resolution of December 21st, 1910, for additional bonds, proposes to improve the public parks, while the land in question, which alone is specified in the November resolution, is outside the park. The objection that the procedure under the act of 1897 was not followed cannot prevail. The act of 1909 provided for its own procedure; it expressly fixed a limit of $150,000 to the amount of bonds to be issued, without regard to the ratables as in the act of 1897, and by its fourth section declared that the powers conferred should be deemed to be in addition to and independent of all powers conferred by any other laws, and not subject to any limitation contained in such other laws. The objection that the resolution of November 2d, 1910, is indefinite and uncertain, in that it fails to specify the improvement intended to be made, cannot prevail since it rests on a misconception of the language of the resolu-

tion.  After a preamble reciting the statutory power in a para-
phrase of the statutory language, the resolution provides for
the issue and sale of bonds to the amount of $50,000, the pro-
ceeds of which said bonds shall be used only for the payment
of the costs of work or improvements therein authorized.
Since the resolution itself does not assume to authorize any im-
provement, it must be that the language means only to au-
thorize the issue of bonds and to limit the use of the proceeds
to the purposes authorized by the statute.    To what specific
purpose within the statutory limitation the proceeds should be
devoted was left undetermined.  We see no objection to this
course.  In fact it seems the orderly procedure, first to secure
the money and then determine on the improvement to be made,
as we will hereafter attempt to show.  The objection to the
resolution of December 21st, 1910, for $15,000 additional
bonds to improve the public park cannot prevail.  Although
it says that the proceeds are to be used and applied for the
improvement of the public park, the deposition shows that
there was no such intention, but that the bonds were to be
used to pay for the building of a pier on the specific tract
mentioned in the resolution of November 2d, 1910.   The
prosecutors cannot be injured by a mere inadvertence of that
character; nor is it by any means certain that the language
of the resolution refers to a use of the proceeds of the bonds
in work to be done upon the land and water embraced within
the limits of the park.  The proceeds are, according to the
resolution, to be used and applied "for the improvement of
the said public park."  It is quite within bounds to construe
this as meaning that in the judgment of the council, a pier
upon the McGrath tract was an improvement of the adjoining
public park.

We think the objections to the resolutions providing for an
issue of bonds are not well taken and those resolutions are
affirmed.

The bonds were not sold, and from the action taken at the
time of the resolution of December 21st, it would seem as if
they might not be salable, since the lowest bidders for the work
agreed with the city on that day that in the event that the city

should be unable to sell the bonds, they would take so many of them as might be necessary, at par and accrued interest in lieu of cash on account of their respective bids. The second section of the statute authorizes the council to apply the proceeds of the bonds to the payment of the cost of works or improvements authorized by the act. There is no other source from which funds can be had to meet the cost. The plain intent was that before the expense was incurred, the amount available to meet it should be ascertained. Until that was done, no contract could be legally made. The case is within the rule of *Hurley* v. *Trenton,* 37 *Vroom* 538; *affirmed,* 38 *Id.* 350, and of *Niles* v. *Board of Education,* 41 *Id.* 1. The contracts should therefore be set aside. The prosecutors are entitled to costs.