SAMUEL WEINBERGER, PROSECUTOR, v. THE CITY OF PASSAIC.

Submitted December 6, 1912—Decided March 10, 1913.

1. To justify a riparian grant to a municipality for park purposes under the act of 1903 (*Pamph. L.,* p. 387; *Comp. Stat.,* p. 4397), it should appear that the land to be granted is "land under water" owned by the state and that it is within the limits or in front of a public park laid out or provided for by ordinance, or in front of streets or highways.

2. The fact that a private person has filled in and improved land below high-water mark belonging to the state, without authority, does not change its original character as "land under water" for the purpose of a riparian grant or lease by the state.

3. In such case the state may itself assert its right against the party thus unlawfully in possession by an action of ejectment, or may transfer its title, and with it the right of action, to a grantee.

4. The act of 1912, page 50, entitled as an independent enactment, but by its first section purporting to amend section 1 of some other act not designated, is of at least doubtful efficacy as a statute, but in any case does not extend the right of municipalities to acquire lands under tidewater beyond those fronting parks or highways.

5. When a municipality seeks to acquire by riparian grant more land than it is authorized by law to acquire, its action may be reviewed by *certiorari*.

On *certiorari*.

Before Justices Trenchard, Parker and Minturn.

For the prosecutor, *Collins & Corbin.*.

For the defendant, *Albert O. Miller.*

The opinion of the court was delivered by

Parker, J. The writ of *certiorari* brings up for review a petition of the city of Passaic based on the resolution of the council of that city requesting the riparian commission of New Jersey to grant to the city certain lands described in the petition as lands under water, for park purposes. Such right as the city has to obtain title to this land from the riparian commission rests upon the act of 1903 (*Pamph. L., p.* 387; *Comp. Stat., p.* 4397), which in its original form was passed on in *Seaside Realty Co.* v. *Atlantic City,* 45 *Vroom* 178; *affirmed,* 47 *Id.* 819, as perhaps amended by the act of 1912 (at *p.* 50). Both the act of 1903 and that of 1912, make the right of the municipality to acquire land under water dependent upon the existence of a public park laid out or provided for by ordinance, along or fronting upon tidewaters of this state, or the existence of streets or highways extending to said tidewaters, and confer the right to apply for a grant or conveyance to the municipality "of the lands under water within the limits of said public park and of the land in front of said streets or highways," and,

by section 2 of the act of 1903, the commissioners may also grant the lands under water owned by the state extending from the inland limits of the park to the exterior line established by the commissioners, and all land under water within the side lines of the streets produced. Hence, in order to justify the present application, it should appear that the land is land under water and that it is within the limits or in front of said public park or in front of streets or highways.

The prosecutors deny that the lands petitioned for are lands under water, and also deny that they are within the limits set by the statute. Other points are made which will be adverted to in due course, but which we pass for the present. The city relies particularly on the act of 1912, which it is claimed is an amendment of the first section of the act of 1903, and will be more specifically touched upon in a moment. For a proper understanding of the case a short description of the nature of the locality should be given at this point.

The park that was laid out by the ordinance comprises most, but not all, of a small island known as Dundee island, lying in a bay of the Passaic river and separated from the west bank thereof by a chute or dead water channel known as the "Slank." This channel begins at the head of Dundee Island north of Monroe street, which runs east and west, and the channel itself runs south, crossing in succession Hudson, Mercer and Bergen streets, and at Essex street turns to the eastward for several hundred feet, and then to the northeastward and rejoins the main channel. Monroe street crosses the north end of Dundee island and continues across the main channel of the river by a bridge. Essex street, or that street produced, crosses the southerly end of the island. There is a street laid out on the map and running north and south approximately down the middle of the Slank as it existed in 1894, and called Fifth street. The park, as described in the ordinance which was passed in 1909, is bounded on the north by Monroe street where it crosses the island; on the east by the main channel and the easterly

end of the Slank; on the south by the line of Essex street produced, and on the west by the street known as Fifth street. The easterly or island shore of the Slank seems to be identical at present with its location in 1894; the westerly or main land shore thereof appears in 1894 to have been some one hundred feet or so west of the westerly line of Fifth street and about two hundred feet south of the southerly line of Essex street produced, but since then by actual filling, apparently without any riparian grant or other authority, the westerly high-water mark in the Slank has been moved to the eastward some two hundred feet and is now some twenty-five feet east of Fifth street and partly north of Essex street, thereby being brought within the limits of the park as laid out by the ordinance. The prosecutor claims by deed lands fronting on the westerly side of Fifth street and on the northerly side of Essex street, and his grievance is that the city by its petition to the riparian commission has asked for a riparian grant of the entire tract of land lying under water between the shores of the Slank as they existed in 1894, thus including a large quantity of what is now upland which had been filled in since that time, part of which he claims to own and to be in possession of. It is important to note that the lands described in the riparian petition include part of the Slank lying. north of Monroe street, and another part lying south of the north line of Essex street and so situated to the north and south of the park as laid out by the ordinance.

*First.* It does not seem to be questioned that *certiorari* is a proper method of attacking this petition. It was the method adopted in the case of Seaside Realty Co. *v.* Atlantic City, already cited.

*Second.* Assuming the correctness of the procedure, the principal claim is that the land to which the prosecutor now claims title, and which is included in the application, is not land under water. It is true that it is not physically land under water at this time, having been filled in as already noted. It was, however, land under water in 1894, and in our judgment is legally such still. The fact that the prose-

cutor, or those under whom he claims, or some other person or persons, have without authority filled this land in, cannot avail the prosecutor as against the rightful claim of the state or its grantees. *Comp. Stat., p.* 4385, *pl.* 10. It is said that the state should bring ejectment, as prosecutor is in possession, but there seems to be no reason why the state, if it has the title without the possession, should not convey that title to a grantee and leave the matter to be settled by a suit between such grantee and the prosecutor.

*Third.* The next and, in our judgment, the decisive point, is that the lands applied for are not entirely embraced within the limits of a park or street, nor do they front thereon, within the meaning of the statute. This brings us to the claim of the city under the act of 1912, whose effect is rather doubtful. It is apparently intended to amend section 1 of the act of 1903, which is entitled as a further supplement to the Riparian act of 1864. Now, the act of 1912 (at *p.* 50), is entitled "An act to authorize the riparian commissioners to grant lands of the state under water to municipalities for street and park purposes and to impose terms upon such municipalities as conditions of such grant," and the first section begins in this way:

"1. Section 1 of the act to which this is an amendment, be and the same is hereby amended to read as follows."

There is absolutely no mention, either in the title or in the body of the act or any other act so intended to be amended, and we are therefore legally at a loss to apply the act of 1912 as an amendment to any other act even if the title were adequate to express such intent.

The act then goes on to copy substantially section 1 of the act of 1903, using the phrase "park or street" instead of the word "park," and adding certain provisos, and particularly the following provision:

"The commissioners aforesaid shall have full power and authority, after notice to the municipality lying on the opposite side of the main stream and nearest to such applying municipality, to make such grant, notwithstanding the same may be for the entire bed or land underneath the whole or

any part of the waters of a branch, arm, lake, lesser channel or any subsiduary or auxiliary portion of any tidal stream of this state," with certain other provisos not necessary to note at this time.

The claim of the city, as we understand it, is that whatever the limitations may have been under the act of 1903 with respect to the necessity of the lands under water applied for, fronting upon the park as laid out by the ordinance, the act of 1912 gives the city the right to acquire from the commission the whole bed of the Slank, notwithstanding the park fronts upon only a portion of it. We do not so understand the legislation. Assuming the act of 1912 to be deemed effective, which could be the case only by regarding it as an independent enactment and not as an amendment to some undesignated prior legislation, and therefore by reading it in flat opposition to its plainly expressed intent, still we deem the rights, if any, conferred thereby to be limited to land under water fronting a public park or street or streets regularly laid out by ordinance. As has already appeared, the public park described in the ordinance of 1909, does not front upon the whole of the Slank but only upon the major portion of it, while the application calls for the whole, and in our view of the case the application is consequently broader than the statute permits, and the city should limit its application under the ordinance of 1909 to the portion of the Slank between Monroe street and Essex street, or possibly Sixth street, at the southerly turn and up to the point where the southerly line of the park intersects the westerly line of Dundee island.

We do not pass upon the legal efficacy of the act of 1912, but content ourselves with calling the attention of counsel to its anomalous features.

For the reason thus given the petition to the riparian commission and the resolution upon which it is based, must be set aside. This renders it unnecessary to discuss the other grounds of attack mentioned in the reasons.